Leota **SNOWBARGER**, Guardian of Marie Brown, Respondent,

v.

**M. F. A. CENTRAL COOPERATIVE,**
Employer, Appellant.
**M. F. A. Mutual Insurance Company,**
Insurer, Appellant.

No. 46479.

Supreme Court of Missouri,

En Banc.

Nov. 10, 1958.

the industrial commission's findings that employee's death did not arise out of and in the course of his employment were supported by competent and substantial evidence on the whole record.

■ No one has questioned our jurisdiction. Respondent apparently agrees with appellants' statement that we have jurisdiction because of the monetary amount in dispute. We should always determine, however, whether this court has jurisdiction in each case because our jurisdiction is limited and not general. Article V, Section 3, Mo.Const. 1945, V.A.M.S.; Crow v. Missouri Implement Tractor Co., Mo., 292 S.W. 2d 573, 574 [1, 2]. The provisions of Article V, Section 3, supra, make it certain that if this court has jurisdiction of this case it is because of "the amount in dispute."

The Workmen's Compensation Act, Section 287.010 et seq., RSMo 1949, V.A.M.S., was approved in 1925 and probably since that time, and certainly since June 1930 (see Wahlig v. Krenning-Schlapp Grocer Co., 325 Mo. 677, 29 S.W.2d 128, 132) this court, either with or without discussion, has exercised jurisdiction in those workmen's compensation cases in which an amount in excess of $7,500 has been claimed or awarded as a "single total death benefit" and wherein the question on appeal involved the total of the award claimed or made. The ascribed reason has been that at the time of the appeal in such cases the amount of the "single total death benefit" was the monetary amount in dispute for purposes of determining appellate jurisdiction.

This division's most recent case in which jurisdiction was exercised on that theory is Conley v. Meyers, Mo., 304 S.W.2d 9. There appellant's motion to transfer to the Kansas City Court of Appeals on the ground that the monetary amount in dispute did not exceed $7,500 was overruled on the authority of Shroyer v. Missouri Livestock Commission Co., 332 Mo. 1219, 61 S.W.2d 713, 715 [9–12], Sayles v. Kansas City Structural Steel Co., 344 Mo. 756, 128 S.W.

Howard F. Major, Columbia, James A. McGee, Columbia, for appellants.

L. F. Cottey, Lancaster, Clare Magee, Unionville, for respondent.

COIL, Commissioner.

In this workmen's compensation case the referee's award of a death benefit in the amount of $8,535 to the legally appointed guardian of deceased employee's widow who had been adjudged non compos mentis, and $400 and $100 for burial and medical expenses, respectively, was reversed by the final award of the Industrial Commission of Missouri which denied any compensation. On appeal the circuit court entered its judgment reversing the final award of the industrial commission and remanding the case to the commission with directions "to reinstate, approve, and affirm the findings and award of compensation made" theretofore by the referee. Appellants, employer and insurer, contend that the trial court erred in reversing the final award of the industrial commission for the reasons that under the undisputed evidence employee's death, as a matter of law, did not arise out of and in the course of his employment and because

2d 1046, 1050 [1], and Ossery v. Burger-Baird Engraving Co., Mo., 256 S.W.2d 805, 807. One of the judges dissented on the ground that the "question of our jurisdiction in Workmen's Compensation death cases should be re-examined." [304 S.W. 2d 16] No motion to transfer that case to banc was filed. Subsequently, the other division one judges adopted the view that the question of this court's jurisdiction in such cases should be re-examined. As would appear, our re-examination of the question has resulted in our conclusion that this court does not have jurisdiction of this workmen's compensation death case.

As pointed out in Shroyer v. Missouri Livestock Commission Co., supra, 61 S.W. 2d 716 [10], this court, prior to the date of that opinion (July 1933), had assumed and exercised jurisdiction without comment in other workmen's compensation death cases; for example, in these cases cited by the court in the Shroyer opinion: Dougherty v. Manhattan Rubber Mfg. Co., 325 Mo. 656, 29 S.W.2d 126; Wahlig v. Krenning-Schlapp Grocer Co., supra; Cassidy v. Eternit, 326 Mo. 342, 32 S.W.2d 75; Leilich v. Chevrolet Motor Co., 328 Mo. 112, 40 S.W.2d 601; Higgins v. Heine Boiler Co., 328 Mo. 493, 41 S.W.2d 565; Brauch v. Skinner Bros. Mfg. Co., 330 Mo. 760, 51 S.W.2d 27; Schulz v. Great Atlantic & Pacific Tea Co., 331 Mo. 616, 56 S.W.2d 126.

Also prior to the Shroyer opinion, this court held in Hohlstein v. St. Louis Roofing Co., 328 Mo. 899, 42 S.W.2d 573, that a judgment reflecting a workmen's compensation award of $20 per week for 300 weeks and $15 per week thereafter for life did not give this court jurisdiction for the reason that, inasmuch as the $6,000 resulting from the 300 weeks at $20 per week was not in dispute, the only amount in dispute was the $15 per week for life, and that thus the total of the amount in dispute was unknown. In answering the argument there made that if this court exercised jurisdiction in compensation death cases, it by analogy should also exercise jurisdiction in compensation non-death cases, the court pointed out that in each compensation death case in which this court had exercised jurisdiction, the "single total death benefit" was in excess of $7,500; and that the reason this court had jurisdiction in such cases and not in a case, for example, in which an award for permanent total disability had been made, was that in death cases the statute provided for the award of a "single total death benefit," while the statute providing for permanent total disability payments did not provide for a "single permanent total disability benefit" and that payments of any unaccrued balance to an injured employee would cease upon his death (42 S.W.2d 576 [8]).

Following the Hohlstein case, supra, this court en banc examined the question of its jurisdiction in workmen's compensation death cases in Shroyer v. Missouri Livestock Commission Co., supra, 61 S.W.2d 715 [8, 9], 716 [10]. There the court reasoned that the time when the total of the monetary amount in actual dispute for jurisdictional purposes should be determined is the time when the appeal is taken. The court then pointed out that the final award in that case was "To Jessie R. Shroyer the sum of $20.00 per week for 621.4 weeks * * * or until prior death or remarriage," and that the judgment appealed from affirming that award recited that the dependent recover from employer and insurer "the sum of twelve thousand four hundred twenty-eight ($12,428.00) dollars payable twenty ($20.00) dollars per week for 621.4 weeks or until the prior death or remarriage of said dependent." The court then stated:

"From the foregoing it is apparent that the amount in dispute when the judgment was rendered and the appeal taken was $12,428 awarded as 'a single total death benefit' and made payable in installments as provided in subsection (b) of section 3319, R.S. 1929 (Mo.St.Ann. § 3319(b). The possibility that this amount might thereafter be reduced by the death or

remarriage of the defendant would obviously not change the amount that was actually in dispute at the time the judgment was rendered and the appeal allowed to this court. In Stuart v. Stuart, 320 Mo. 486, 488, 8 S.W.2d 613, it is well said that: 'Such jurisdiction must so appear *at the time the appeal is taken*; nothing that subsequently occurs may be invoked either to confer jurisdiction or to show that the appeal was one falling within our jurisdiction.' By the same course of reasoning it follows that the mere possibility of the subsequent happening of an event that would reduce the amount actually in dispute at the time the appeal was taken to $7,500 or less would not deprive this court of the pecuniary ground of jurisdiction shown by the amount then in dispute." 61 S.W. 2d 716 [10].

■ Certainly, none will question that the amount in actual dispute for jurisdictional purposes is determined at the time an appeal is taken, and that nothing that subsequently occurs should be invoked to confer jurisdiction which did not exist at the time of the appeal, and that the possibility or contingency that a subsequent event will reduce the amount that was *actually in dispute* at the time an appeal was taken should not deprive the court of the jurisdiction which it had at the time of the appeal. Cf. Hunter v. Hunter, 355 Mo. 599, 197 S.W.2d 299, 300 [3–5].

■ In our view the fallacy in the Shroyer opinion is the assumption that *the amount actually in dispute* at the time the appeal was taken was the amount of the "single total death benefit." In other words, the court in Shroyer reached the conclusion that simply because the judgment there encompassed an award of a "single total death benefit" in excess of $7,500, the amount of such "single total death benefit" was in dispute at the time the appeal was taken. Such a conclusion was fallacious because it was reached

without considering or applying the well-established rule for determining the monetary amount in dispute at the time of an appeal, viz., that the transcript must *affirmatively show* that at the time of appeal there is in actual dispute, *independent of all contingencies,* an amount exceeding $7,500 exclusive of costs. That has been and is, at least in all cases other than workmen's compensation death cases, the invariable rule used to test the amount in dispute for jurisdictional purposes. In Stuart v. Stuart, 320 Mo. 486, 8 S.W.2d 613, after plaintiff-husband's divorce suit and defendant-wife's cross bill had been dismissed and after an affidavit for appeal had been filed by the wife from the judgment dismissing her cross bill and after she had filed a motion for further allowance of suit money and alimony pendente lite, the trial court ordered plaintiff to pay defendant the sum of $300 per month for support pending appeal, $1,000 for attorneys' fees, $650 for preparation of the transcript, and $1,110 for printing the abstract and for paying the filing fee in the appellate court. That order was before this court for review on plaintiff's appeal (defendant's appeal from the judgment on the merits was also pending). This court pointed out that the reason for its jurisdiction must in every instance affirmatively appear from the record of the trial court at the time the appeal was taken. (It was from the Stuart case that the court en banc in the Shroyer case quoted. See 61 S.W. 2d 716 [10].) This court further pointed out in the Stuart case that the amount there unconditionally due was the first installment of a $300 per month alimony judgment and the $2,760 suit money, or a total of $3,060; that it was true that there was a right to $300 per month while the appeal was pending, and that if that right to $300 per month was exercised for as long as one year and four months, the value of that right, in addition to the money unconditionally due, would total an amount in excess of $7,500. But the court made clear that the right to $300 per

month was not enforceable in all events; that two contingencies, upon which its enforcement depended, were if either party died or if the parties resumed conjugal relations. In either event the right to the $300 per month would end and the total right to alimony pendente lite was therefore of a contingent value. The court then said: "We are on firmer ground in holding, as we do, that *the appellate jurisdiction of this court, on the ground of the amount in dispute, attaches when, and only when, the record of the trial court affirmatively shows that there is involved in the controversy, independent of all contingencies, an amount exceeding $7,500, exclusive of costs.* Umlauf v. Umlauf, 103 Ill. 651. Tested by this rule, we are clearly without jurisdiction of this appeal." 8 S.W.2d 614. (Italics present writer's.)

Thus, when the court in the Shroyer case quoted a portion of the opinion from the Stuart case, supra, it omitted to quote or take into account the basic jurisdictional principle or rule there enunciated that the amount which the record must affirmatively show to be in actual dispute at the time an appeal is taken must be an amount which exceeds $7,500, exclusive of costs, *"independent of all contingencies."* See also Hardt v. City Ice & Fuel Co., 340 Mo. 721, 102 S.W.2d 592, 593 [3]; Jenkins v. Jenkins, Mo., 251 S.W.2d 243, 245 [3, 4]; Hogue v. Wurdack, Mo., 292 S.W.2d 576, 577 [2, 3]; Hanssen v. Karbe, Mo., 106 S.W.2d 415 [2].

Now, on re-examination, it seems apparent that the court in the Shroyer case exercised jurisdiction in that workmen's compensation death case and thereby established a rule by which this court ever since has assumed jurisdiction in subsequent like cases on the fallacious premise that because the statute (then RSMo 1929, § 3319, now Section 287.240 RSMo 1949, V.A.M.S.) provided that "the employer shall also pay to the total dependents of the employee a *single total death benefit* * * *," (our italics), therefore, if that "single total death bene-

fit" awarded was in excess of $7,500, that sum, ipso facto, was the amount in dispute. That conclusion fails to give proper effect to another portion of the same section 287.240 (also a part of § 3319 at the time of the Shroyer case) which provides that on the death or remarriage of a widow, who, as here and as was true in the Shroyer case, is the sole dependent, the death benefit payments shall cease (Section 287.240(4) (a) RSMo 1949, V.A.M.S.)

■ There is no magic in the words "single total death benefit." When the qualifying provision directing that payments being made on the "single total death benefit" shall cease upon the death or remarriage of the widow is taken into account, it is clear that what the statute really provides is that employer shall pay an employee's widow who is his sole dependent a sum not to exceed ———— dollars (computed in a prescribed manner) at the rate of ———— dollars per week, such weekly payments to continue until such time as the maximum sum stated shall have been paid or the widow remarries or dies, whichever shall first occur. It seems crystal clear to us, therefore, that when an appeal is taken from a judgment encompassing such an award the amount which the transcript affirmatively shows to be in dispute, independent of all contingencies, is the amount then due and payable. But all of such an award will be due and payable or only a portion thereof, depending upon the contingency of how long the widow lives, unmarried, after the date of the award. It must follow that the transcript in such a case would not and could not affirmatively show that there was in dispute, independent of all contingencies, an amount exceeding $7,500, exclusive of costs, unless the amount accrued at the time of the appeal exceeded $7,500.

We have consistently ruled that we have no jurisdiction in workmen's compensation cases, other than death cases, irrespective of the size of the award (unless accrued sums exceeded $7,500). For example, in Hogue v. Wurdack, supra, 292 S.W.2d 577, we said:

"It will be seen from the foregoing that if all of the amounts provided in the said award are eventually paid, the total received would be $7,770.75. Therefore, *if it may be said that the total of the award is the amount in dispute,* then it is apparent that we would have jurisdiction. On the other hand, we note that the amount of the permanent partial disability that had accrued at the time this appeal was taken (May 13, 1955) was $3,540, which, together with the allowances for medical aid and disfigurement, would make a total due on that date of $5,310.75.

"We have heretofore stated that 'Our jurisdiction attaches when, and only when, the record of the trial court affirmatively shows that there is involved in the controversy, independent of all contingencies, an amount exceeding $7,500.' Hardt v. City Ice & Fuel Co., 340 Mo. 721, 102 S.W.2d 592, 593. In applying that rule to the instant case we cannot say that the amount in dispute, *independent of all contingencies,* exceeds $7,500.

"In Section 287.230, subd. 2 RSMo 1949, V.A.M.S., it is provided that 'Where an employee is entitled to compensation under this chapter for an injury received and death ensues for any cause not resulting from the injury for which he was entitled to compensation, payments of the unpaid unaccrued balance for such injury shall cease and all liability therefor shall terminate unless there be surviving dependents at the time of such death.' Under that provision it is apparent that the liability for the unaccrued payments for claimant's permanent partial disability would terminate in the event of his death without leaving one or more dependents surviving. Scannell v. Fulton Iron Works Company, 365 Mo. 889, 289 S.W.2d 122. Since a contingency exists under which liability for the payment of the instant award (and judgment thereon) may be terminated before a sum in excess of $7,500 has accrued, we cannot say with certainty that the amount in dispute exceeds that sum." (First italics present writer's.)

So also in the present case the liability for payment of the instant "single total death benefit" award may be terminated before a sum in excess of $7,500 will have become due and payable and so also we may not say that the amount in dispute, independent of all contingencies, exceeds $7,500. We should be consistent in the application of the criteria by which our jurisdiction is determined.

Since the Shroyer case at least two other cases have specifically discussed jurisdiction, viz., Platies v. Theodorow Bakery Co., 334 Mo. 508, 66 S.W.2d 147, and Sayles v. Kansas City Structural Steel Co., supra. Both of those cases specifically reaffirmed the reasoning of the Shroyer case and refused to depart from it. In a great number of cases between the time of the Sayles opinion in 1939 and the Conley opinion in 1957, we have exercised jurisdiction upon the authority of the Shroyer case.

Those cases and others holding contrary to our conclusion herein should no longer be followed in determining our jurisdiction on facts like those in the instant case.

The case is transferred to the Kansas City Court of Appeals.

PER CURIAM.

The foregoing opinion by COIL, C., is adopted as the opinion of the court, en banc.

All concur.