**Daniel K. NAGLE, Appellant,**

v.

**Monnie DREW et al., Respondents.**

**No. 51221.**

Supreme Court of Missouri,
Division No. 1.

Dec. 13, 1965.

Mogab & Hughes, by Richard L. Hughes, St. Louis, for appellant.

David G. Dempsey, Lloyd E. Eaker, Eaker, Dempsey, Zerman & Dempsey, Clayton, for respondent, Oliver Wade.

Luke, Cunliff, Wilson, Herr & Chavaux, by Robert R. Schwarz, St. Louis, for respondent Aetna Cas. & Sur. Co.

HOUSER, Commissioner.

This workmen's compensation claim was denied by the referee. The Industrial Commission affirmed the decision of the referee. The Circuit Court affirmed the Industrial Commission's award of no compensation. Claimant has appealed from the judgment of the Circuit Court.

Appellant asserts that we have jurisdiction because the amount in dispute exceeds $15,000 on the basis that at the time of the hearing before the referee appellant had incurred medical expenses of $11,947.50 and that compensation of "approximately $4,322.50" was then due him, at the rate of $47.50 per week.

The record must affirmatively show that an amount in excess of $15,000 is in dispute for this court to be vested with jurisdiction on that ground. Although the record shows that at the time of the hearing before the referee medical expenses in the sum of $11,947.50 had been incurred it does not show, directly or indirectly, that compensation in the sum of

$4,322.50 was then due claimant. Appellant's jurisdictional statement that "Compensation due at the time of the hearing at the rate of $47.50 per week was approximately $4,322.50 (T. 12)" is not borne out by the transcript at page 12 or elsewhere.

The only pertinent testimony given by claimant Daniel K. Nagle on the subject is that he had been employed by Monnie Drew as a truckdriver and in other capacities "for about one month * * * practically steady * * * practically every day * * * on the average three or four days a week * * * five days a week * * * [at the rate of pay of] Two and a quarter an hour." Claimant did not testify as to the number of hours per day he worked. Apparently that varied. On cross-examination he conceded that he worked off and on and not day by day or "steady"; sometimes only part of a day and some days, depending on weather and whether Drew had jobs, not at all. For painting he was paid $10 a day and the same amount per day "for moving the rig."

Monnie Drew, the alleged employer, testified that claimant Nagle was *not* working for him on the premises where the injury occurred on July 31, 1961 and that Nagle had not been working for him there at any time after Drew commenced work on that job on July 28, 1961. He testified that Nagle had worked for him at the rate of $2 per hour during July, 1961 on other jobs at other locations, as follows: as a truckdriver on a job on Olive Street Road for three days; as a truckdriver on Natural Bridge, for two days; and at Drew's house, doing painting work, on three days; that this was the total amount of work that Nagle had done for Drew. As far as hours are concerned Drew's records showed merely that during the week preceding July 31, 1961 Nagle worked 2 hours on Wednesday, 8 hours on Thursday, 2 hours on Friday and 5 hours on Saturday. The records of actual days or hours worked other than that week were not shown.

Where as here the injured person has not been engaged in the employment of the same employer for the full year immediately preceding the accident compensation is to be computed according to the annual earnings which persons of the same class in the same employment and same location have earned during such period, § 287.250(3), but there is no such evidence in this record. Nor can the annual earnings or average daily earnings be computed under § 287.250(4 or 5) for lack of evidence in this record.

The commission found that claimant sustained "grievous injuries" but made no finding as to their nature and extent, or the amount of the weekly wage or any other facts which might bear upon the size of the award. There was testimony that claimant is paralyzed as a result of the injuries and can never walk again and that his condition is permanent. If claimant sustained permanent total disability his compensation would be calculated under § 287.-200 (2/3 of average earnings as computed under § 287.250 during 300 weeks, but not less than $16 nor more than $47.50 per week, and thereafter on the basis of 40% of the average earnings, for life, but not less than $18 nor more than $30.50 per week), but there was no finding below that claimant sustained permanent total disability. In a proper case, where there is a finding of permanent total disability and no evidence of annual earnings or average daily earnings (making a computation under § 287.250 possible) it could be argued that jurisdiction could be pieced out by calculating the amount of compensation due on the basis of the minimum allowance under the statute, $16 per week, and adding that figure to the medical expense accrued. This would be of no avail here. It is the amount in dispute at the time of appeal that counts. Snowbarger v. M.F.A. Central Cooperative, Mo.Sup., 317 S.W.2d 390 [2]. The appeal was taken not more than 161 weeks after the injury. 161 times 16 is 2,576. $2,576 added to the medical expense figure of $11,947.50 would not raise

the amount to the jurisdictional figure of $15,000.

Accordingly, the cause is ordered transferred to the St. Louis Court of Appeals.

WELBORN and HIGGINS, CC., concur.

PER CURIAM.

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.